IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                 Case No. 18-10128-01-JWB

TAYLOR M. DEGARMO,

       Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for release from custody. (Doc. 112.) The motion is fully briefed and is ripe for decision. (Docs. 114, 115, 117, 118, 119.) For the reasons stated herein, the motion for release is DENIED.

**I.  Background and History**

Defendant and two other individuals were charged in an indictment filed September 19, 2018. (Doc. 10.) Defendant was charged with the following: Count Two - distribution of 50 grams of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B); Count Three - possession with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and Count Four - possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A) and (2). (Doc. 10.) Defendant was detained pending trial based on a finding that his release would pose both a flight risk and a danger to the community. (Doc. 9.)

On April 16, 2019, Defendant entered a plea of guilty to Counts Two and Four of the indictment. (Doc. 61.) He entered into a Rule 11(c)(1)(C) plea agreement with the government in

which the parties agreed an appropriate sentence would include imprisonment of 60 months on Count Two and 60 months consecutive on Count Four, for a total of 120 months imprisonment. (Doc. 62 at 2-3.) The plea agreement included the following facts in support of Count Four:

> On September 5, 2018, Defendant [Degarmo] sold approximately 219 grams of a mixture or substance containing methamphetamine to Co-defendant Davis. This drug trafficking offense occurred in Defendant Degarmo's residence.… At the time of the above reference[d] drug transaction, Defendant Degarmo possessed nine firearms in his residence which he possessed for the purpose of Defendant's protection during the drug trafficking offense identified in Count Two. The firearms included: 1) a Kimber, model Ultra Carry II, .45 caliber semi-automatic handgun; 2) a Charter Arms, model Patriot, .357 magnum caliber handgun; 3) a Sturm, Ruger & Company, Inc., model Ruger [Security] Six, .357 magnum caliber handgun; 4) a Smith and Wesson, model SD9VE, 9mm caliber handgun; 5) an H&K model USP 40, .40 caliber handgun; 6) Smith & Wesson, model M&P-15, 5.56 caliber semiautomatic rifle; 7) a Palmetto State Armory, model PA-15 .300 BLACKOUT caliber, semiautomatic rifle; 8) a Remington, model 700, .270 caliber bolt action rifle; and 9) an Ithaca, model 100, 20 gauge double barrel shotgun. Each of the above firearms functioned as designed.

(Doc. 62 at 2.) The Presentence Report (PSR) included an extensive description of Defendant's "complex cardiac history," which began in 2007. (Doc. 81 at 30.[1]) The court accepted the parties' Rule 11(c)(1)(C) agreement and sentenced Defendant to a total term of 120 months imprisonment.[2] Judgment was entered on September 18, 2019. (Doc. 102.)

On May 8, 2020, Defendant filed a pro se motion for release from custody. (Doc. 112.) The motion asserted that Defendant's health, including his history of significant heart disease, makes him especially vulnerable and at-risk of serious illness or death from COVID-19, and it stated that the institution where Defendant was incarcerated (FMC Fort Worth) had over 450 positive coronavirus cases. (*Id.* at 2-3.) The motion cited both 18 U.S.C. § 3624(c)(2) and 18

---

[1] Defendant had a heart attack in 2007, at age 27, after ingesting methamphetamine. In 2008 he had a pacemaker and defibrillator implanted. The defibrillator was replaced in 2013. He had various complications (some likely secondary to his illicit drug use) and his defibrillator and pacemaker were replaced in 2018. (Doc. 81 at 29-32.) In 2019, he was diagnosed with nonischemic cardiomyopathy, tachycardia, and heart failure with reduced ejection fraction. (Doc. 177-7 at 1.) He takes medication for, among other things, cardiomyopathy, cardiac arrhythmia, and congestive heart failure. (Doc. 117-9 at 2.)

[2] The applicable sentencing guideline range was 135 to 168 months. (Doc. 81 at 35.)

U.S.C. § 3582. (*Id.* at 17.) Defendant conceded he had not exhausted Bureau of Prison (BOP) administrative remedies on his request. (*Id.* at 15-16.) In response, the government initially argued the motion should be dismissed for lack of exhaustion (Doc. 114 at 5), but by the time supplemental briefs were filed it conceded Defendant had exhausted his administrative remedies, making that issue moot. (Doc. 118 at 7.)

Assistant Federal Public Defender David Magariel entered an appearance on Defendant's behalf and filed a supplement in support of Defendant's motion. (Doc. 117.) The supplement argues compassionate release is appropriate under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, because: Defendant's condition (including congestive heart failure, obesity, and high blood pressure) places him at the highest risk of serious illness or death should he contract COVID-19; FMC Fort Worth has had about 600 positive COVID-19 cases with 12 deaths at the facility; the court could impose a condition of supervised release that Defendant serve five-years' home confinement in lieu of his remaining sentence; and the court could extend Defendant's term of supervised release by five additional years. (*Id.* at 1-2.)

**II. Analysis**

A. CARES Act

Defendant's initial motion cited 18 U.S.C. § 3624(c)(2) as a basis for relief. That provision authorizes the Director of the BOP, in the final months of a prisoner's sentence, to place the prisoner in home confinement for "the shorter of ten percent of the term of imprisonment of that prisoner or 6 months." *Id.* The CARES Act [the Coronavirus Aid, Relief, and Economic Security Act], Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), temporarily gives the Director discretion to lengthen the maximum amount of time the Director can place a prisoner in home confinement under section 3624(c)(2). *See id.* ("the Director of the Bureau may lengthen the

maximum amount of time [for home confinement] … as the Director determines appropriate.")
"Under the plain language of the statute, however, that discretion is left to the BOP." *United States v. O'Brien*, No. 19-10003-JWB, 2020 WL 4260630, at *2 (D. Kan. July 24, 2020) (citing *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020)). Accordingly, the court lacks jurisdiction to grant relief under §3624(c)(2). *O'Brien*, 2020 WL 4260630, at *2.

B.  Compassionate release

A district court is authorized to modify a final sentence only where Congress has expressly granted the court jurisdiction to do so. *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014). The so-called compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides one such grant of jurisdiction. It provides in part:

> **(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court [after a defendant exhausts BOP remedies] … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction; …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582 (West).

The Sentencing Commission's applicable policy statements are found in U.S.S.G. § 1B1.13. That provision similarly authorizes a reduction in sentence in certain circumstances, including where the court determines after considering the §3553(a) factors that extraordinary and compelling reasons warrant the reduction, and provided "the defendant is not a danger to the safety

4

of any other person or to the community….." *Id.* The commentary lists specific medical conditions that are considered to be extraordinary and compelling – none of which Defendant appears to meet – and includes a catch-all provision for other reasons the BOP Director determines to be extraordinary and compelling. The prevailing view is that the court, as well as the BOP Director, has discretion under this catch-all provision to find other circumstances extraordinary and compelling. *See United States v. Mathews,* No. 15-40094-01-DDC, 2020 WL 4335010, at *4 (D. Kan. July 28, 2020).

As indicated previously, the government concedes Defendant has exhausted his administrative remedies, and it does not dispute that Defendant suffers from serious health conditions. (Doc. 118 at 7, 14.) The court finds Defendant has established that he suffers from severe cardiovascular disease, hypertension (Stage 1), and obesity; that his condition places him at a significantly increased risk of serious illness or death if he were to contract COVID-19; and that inmates and staff at FMC Fort Worth have contracted and currently have COVID-19 in numbers higher than many other federal detention facilities[3] and at rates above those reflected among the population of Sedgwick County. (Doc. 117 at 10-11; Doc. 119 at 3.) Defendant requests a reduction to a time-served sentence with a supervised release condition of five years' home confinement, an extension of supervised release for five additional years, and a release plan that would allow him to live with his grandfather in Derby, Kansas. (*Id.* at 15-16.)

The health and risk factors established by Defendant, standing alone, weigh in favor of his requested reduction to a time-served sentence with a condition of home confinement. But the court determines after weighing all of the factors in section 3553(a) that the circumstances do not warrant

---

[3] The BOP posts a daily update of coronavirus cases at BOP institutions. *See* Bureau of Prisons COVID-19 Cases summary, https://www.bop.gov/coronavirus/ (last visited 09/02/2020). As of September 1, 2020, BOP reported 21 active inmate COVID-19 cases at FMC Fort Worth, 8 active staff cases, 12 inmate deaths, 0 staff deaths, 576 inmates recovered, and 6 staff members recovered.

a reduction in Defendant's sentence or a reduction to a time-served sentence with home confinement.

The nature and circumstances of the offense weigh strongly against the requested reduction. *See* 18 U.S.C. §3553(a)(1). The offense involved Defendant selling a sizeable quantity of methamphetamine and possessing a small arsenal of firearms for the purpose of protecting and furthering his drug trafficking. The offense was serious by its nature and posed a serious threat to public safety. Defendant's history and characteristics likewise weigh against a reduction. Defendant is now forty years old; his twenty-year span of criminal history includes drug offenses, multiple instances of fleeing from law enforcement officers, failure to appear, and battery. (Doc. 81 at 14-25.)

Reducing Defendant's 120-month sentence to time-served with home confinement after he has served only about 15% (18 months) of the original sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). *See also O'Brien,* 2020 WL 4260630, at *3 (the term of incarceration weighed against early release where defendant had not yet served one-fourth of his sentence). A reduction would also undermine deterrence to criminal conduct, both as to Defendant personally and as to others. *Cf.* 18 U.S.C. § 3553(a)(2)(B) (court must consider whether sentence affords adequate deterrence to criminal conduct). Given the fact that Defendant has continued to engage in criminal behavior since the age of 20, the court concludes the need to protect the public from further crimes of the defendant takes on additional significance and weighs strongly against a sentence of home confinement, as Defendant's history indicates a likelihood of further crimes should be released from custody. The PSR shows that Defendant previously received probation and/or suspended sentences for several offenses; those sentences ultimately proved no deterrent to his criminal behavior in this case,

including his unlawful possession of a multitude of firearms for the purpose of furthering drug trafficking. (Doc. 81 at 15-24.)  18 U.S.C. § 3553(a)(2)(C) (court must consider the need for the sentence to protect the public from further crimes of the defendant).  A reduction in sentence would serve to lower the health risk to Defendant posed by his continued incarceration, but it would do so at the cost of creating a risk of harm to the public from the likelihood of further crimes by Defendant.  The court concludes that Defendant's release – even under supervision or monitoring in home confinement – would pose a danger to the community.  That danger is demonstrated by the facts of the instant case, where Defendant possessed a potentially lethal combination of drugs and firearms.  *Cf. United States v. Plank*, No. 17-20026-JWL, 2020 WL 3618858, at *4 (D. Kan. July 2, 2020) (motion granted where defendant "has no known history of violence, and neither his present offense nor his previous offenses involved the use of any weapons.") A reduction at this point would also create significant and unwarranted sentencing disparities, both with regard to the less culpable codefendants in this case, who received imprisonment sentences of 84 months and 13 months respectively, and with regard to other defendants who committed similar offenses. After considering these and all of the factors set forth in § 3553(a), the court concludes that Defendant's motion for a reduction in sentence should be denied.

### III.  Conclusion

Defendant's motion for release from custody (Doc. 112) is DENIED.  IT IS SO ORDERED this 3rd day of September, 2020.

                                                    _____s/ John W. Broomes_____
                                                    JOHN W. BROOMES
                                                    UNITED STATES DISTRICT JUDGE