IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                              Case No.  18-10128-JWB

TAYLOR M. DEGARMO,

Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for compassionate release from custody, appointment of counsel, and to seal his attachments. (Doc. 125.)  The motion is fully briefed and ripe for decision.  (Docs. 125, 126, 127.)  The motion is DENIED IN PART and GRANTED IN PART for the reasons stated herein.

### I.    Facts

Defendant and two other individuals were charged in an indictment filed September 19, 2018. (Doc. 10.)  Defendant was charged with the following: Count Two - distribution of 50 grams of methamphetamine, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B); Count Three - possession with intent to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and Count Four - possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A) and (2).  (Doc. 10.)  Defendant was detained pending trial based on a finding that his release would pose both a flight risk and a danger to the community.  (Doc. 9.)

On April 16, 2019, Defendant pleaded guilty to Counts Two and Four of the indictment. (Doc. 61.)  He entered into a Rule 11(c)(1)(C) plea agreement with the government in which the

1

parties agreed an appropriate sentence would include imprisonment of 60 months on Count Two and 60 months consecutive on Count Four, for a total of 120 months imprisonment.  (Doc. 62 at 2-3.)  The plea agreement included the following facts in support of Count Four:

> On September 5, 2018, Defendant [Degarmo] sold approximately 219 grams of a mixture or substance containing methamphetamine to Co-defendant Davis. This drug trafficking offense occurred in Defendant Degarmo's residence.… At the time of the above reference[d] drug transaction, Defendant Degarmo possessed nine firearms in his residence which he possessed for the purpose of Defendant's protection during the drug trafficking offense identified in Count Two. The firearms included: 1) a Kimber, model Ultra Carry II, .45 caliber semi-automatic handgun; 2) a Charter Arms, model Patriot, .357 magnum caliber handgun; 3) a Sturm, Ruger & Company, Inc., model Ruger [Security] Six, .357 magnum caliber handgun; 4) a Smith and Wesson, model SD9VE, 9mm caliber handgun; 5) an H&K model USP 40, .40 caliber handgun; 6) Smith & Wesson, model M&P-15, 5.56 caliber semiautomatic rifle; 7) a Palmetto State Armory, model PA-15 .300 BLACKOUT caliber, semiautomatic rifle; 8) a Remington, model 700, .270 caliber bolt action rifle; and 9) an Ithaca, model 100, 20 gauge double barrel shotgun. Each of the above firearms functioned as designed.

(Doc. 62 at 2.)  The Presentence Report (PSR) included an extensive description of Defendant's "complex cardiac history," which began in 2007.  (Doc. 81 at 30.)  The court accepted the parties' Rule 11(c)(1)(C) agreement and sentenced Defendant to a total term of 120 months imprisonment. Judgment was entered on September 18, 2019.  (Doc. 102.)

On May 8, 2020, Defendant filed a pro se motion for release from custody.  (Doc. 112.) The motion asserted that Defendant's health, including his history of significant heart disease, makes him especially vulnerable and at-risk of serious illness or death from COVID-19, and it stated that the institution where Defendant was incarcerated (FMC Fort Worth) had over 450 positive coronavirus cases.  (*Id.* at 2-3.) The motion cited both 18 U.S.C. § 3624(c)(2) and 18 U.S.C. § 3582.  (*Id.* at 17.)  Defendant conceded he had not exhausted Bureau of Prison (BOP) administrative remedies on his request.  (*Id.* at 15-16.)  In response, the government initially argued the motion should be dismissed for lack of exhaustion (Doc. 114 at 5), but by the time supplemental briefs were filed it conceded Defendant had exhausted his administrative remedies, making that

issue moot.  (Doc. 118 at 7.)  After considering the factors set forth in 18 U.S.C. § 3553(a), the court denied Defendant's motion for early release. (Doc. 120.)

In June of this year, Defendant filed a second motion for early release. (Doc. 125.)  He again asserts that his physical health is an extraordinary and compelling reason for early release. (Doc. 125 at 7.)  He argues that the BOP cannot provide the care he needs, as his heart condition has deteriorated in such a manner that he will need to be put on a heart donor list when he is released.  (*Id.*)  Additionally, Defendant underwent a procedure where a biventricular implantable cardioverter defibrillator was implanted in his chest.  (Doc. 125-4 at 1.)  Based on the medical records, this procedure was done around August 2023.  (*See id.*)  However, after the procedure, it appears Defendant's heart condition stabilized.  (*See id.* at 1–2.)  The warden noted that the Health Services Department, after reviewing Defendant's medical records, determined that his illness was not life-threatening, and the cardiologist who assessed Defendant in February of 2024 concluded that his symptoms were stable.  (*See* Doc. 125-1 at 2.)

Defendant also claims that he should be released early because his grandfather's health is deteriorating, and he would be the family member to take care of him.  (Doc. 125 at 7.)  Defendant implies that there are other family members who care for his grandfather, but that it is difficult for them to do so because of their jobs and children.  (*See id.*)  Defendant's final argument for why he should be released early is that he participated in rehabilitation programs and is now sufficiently rehabilitated.  (*See id.*)

Regarding Defendant's request for compassionate release because of his heart condition, it appears as if he exhausted his administrative remedies for this claim.  One of Defendant's exhibits is his request to the warden for early release because of his health conditions, and the warden's denial of Defendant's request.  (Doc. 125-1 at 1–2.)  However, Defendant has not exhausted his

3

administrative remedies for his other two justifications—family circumstances and rehabilitation—as Defendant's request to the warden only references his health conditions. (*See id.*)

## II.    Standard

Defendant moves for a sentence reduction under § 3582(c)(1)(A). Under that statute, a sentence reduction is allowed when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a reduction. *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021). The First Step Act changed this to allow a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, 861 F. App'x 251, 253 (10th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Exhaustion is mandatory. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

The Tenth Circuit has endorsed a three-step test for district courts to use in deciding motions filed under § 3582(c)(1)(A). *McGee*, 992 F.3d at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny the motion when any of the three requirements is lacking and the court need not address the other requirements. *Id.*

at 1043.  But all requirements must be addressed when the court grants a motion for release under the statute.  *Id.*

### III.    Analysis

The court notes that Defendant did not submit a request to the warden for early release because of his family circumstances and alleged rehabilitation.  Rather, Defendant's exhibits attached to his motion indicate that his sole request to the warden was for early release due to his health conditions.  (*See* Doc. 125-1 at 1–2.)  The government argues that because Defendant failed to exhaust the administrative remedies required under 18 U.S.C. § 3582(c)(1)(A), the court cannot consider these arguments out of ripeness concerns.  (Doc. 126 at 4.)  The government relies on *United States v. Hemmelgarn*, in which the Tenth Circuit determined that 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule.  *See* 15 F.4th at 1030–31.  Because Defendant failed to comply with § 3582(c)(1)(A)'s mandatory claim-processing rule for his family circumstances and rehabilitation claims, the court cannot consider them when reviewing Defendant's request for early release.  *See Malouf v. Sec. & Exch. Comm'n*, 933 F.3d 1248, 1256 (10th Cir. 2019).

Furthermore, upon review of Defendant's arguments relating to his health, the court holds that its analysis and conclusion remain unchanged since Defendant's first request for early release in 2020.  As permitted by law, the court forgoes steps one and two in the Tenth Circuit's three-part test.  Instead, it goes directly to step three and analyzes Defendant's request under the relevant factors set forth in 18 U.S.C. § 3553(a).  After weighing the factors, the court has determined that the circumstances do not warrant a reduction in Defendant's sentence.

The nature and circumstances of the offense weigh strongly against the requested reduction.  *See* 18 U.S.C. §3553(a)(1).  The offense involved Defendant selling a sizeable quantity of methamphetamine and possessing a small arsenal of firearms for the purpose of protecting and

furthering his drug trafficking. The offense was serious by its nature and posed a serious threat to public safety. Defendant's history and characteristics likewise weigh against a reduction. Defendant is now forty years old; his twenty-year span of criminal history includes drug offenses, multiple instances of fleeing from law enforcement officers, failure to appear, and battery. (Doc. 81 at 14-25.)

Reducing Defendant's 120-month sentence would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). *See also O'Brien,* 2020 WL 4260630, at *3 (the term of incarceration weighed against early release where defendant had not yet served one-fourth of his sentence). A reduction would also undermine deterrence to criminal conduct, both as to Defendant personally and as to others. *Cf.* 18 U.S.C. § 3553(a)(2)(B) (court must consider whether sentence affords adequate deterrence to criminal conduct). Given the fact that Defendant has continued to engage in criminal behavior since the age of 20, the court concludes the need to protect the public from further crimes of the defendant takes on additional significance and weighs strongly against a sentence of home confinement, as Defendant's history indicates a likelihood of further crimes should be released from custody. The PSR shows that Defendant previously received probation and/or suspended sentences for several offenses; those sentences ultimately proved no deterrent to his criminal behavior in this case, including his unlawful possession of a multitude of firearms for the purpose of furthering drug trafficking. (Doc. 81 at 15-24.) 18 U.S.C. § 3553(a)(2)(C) (court must consider the need for the sentence to protect the public from further crimes of the defendant). A reduction in sentence would serve to lower the health risk to Defendant posed by his continued incarceration, but it would do so at the cost of creating a risk of harm to the public from the likelihood of further crimes by Defendant. The court concludes that Defendant's release would pose a danger to the community.

That danger is demonstrated by the facts of the instant case, where Defendant possessed a potentially lethal combination of drugs and firearms. *Cf. United States v. Plank*, No. 17-20026-JWL, 2020 WL 3618858, at *4 (D. Kan. July 2, 2020) (motion granted where defendant "has no known history of violence, and neither his present offense nor his previous offenses involved the use of any weapons.") A reduction at this point would also create significant and unwarranted sentencing disparities, both with regard to the less culpable codefendants in this case, who received imprisonment sentences of 84 months and 13 months respectively, and with regard to other defendants who committed similar offenses. After considering these and all of the factors set forth in § 3553(a), the court concludes that Defendant's motion for a reduction in sentence is denied.

## IV. Conclusion

Therefore, Defendant's motion for early release from custody (Doc. 125) is DENIED. Defendant's request for appointment of counsel is DENIED as moot. Defendant's request to seal his attachments is GRANTED.

IT IS SO ORDERED. Dated this 25th day of October, 2024.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE